UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA ex rel.
DANIEL KIRK,

                              Plaintiff,

        -against-

SCHINDLER ELEVATOR CORP.,

                              Defendant.

05 Civ. 2917 (SHS)


<u>OPINION & ORDER</u>


SIDNEY H. STEIN, U.S. District Judge.

        Daniel Kirk, proceeding as qui tam relator on behalf of the United
States, has alleged that requests by defendant Schindler Elevator Corp. for
payment from federal agencies for construction work it performed
violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. Kirk does
not allege that Schindler defrauded the government by requesting
payments for work it did not perform. Claims to federal funds can violate
the FCA for a variety of reasons, including that the submission of the claim
for payment by Schindler constitutes an implied false certification of
compliance with a federal law. *See generally Mikes v. Straus*, 274 F.3d 687
(2d Cir. 2001). Here, Kirk claims that Schindler filed false reports with the
U.S. Department of Labor ("DOL") in order to conceal its failure to comply
with the Vietnam Era Veterans Readjustment Assistance Act ("VEVRAA")
and continue receiving government contracts. Specifically, VEVRAA and
its implementing regulations require Schindler, as a federal contractor, to
file with the DOL each year a "VETS-100" report, listing the number of
veterans the contractor employs. *See United States ex rel. Kirk v. Schindler
Elevator Corp.* ("*Kirk I*"), 606 F. Supp. 2d 448, 450 (S.D.N.Y. 2009) (citing 38
U.S.C. § 4212; 41 C.F.R. § 61-250.10; 48 C.F.R. §§ 52.222-35 to -38). VEVRAA
also conditions federal payments to contractors on their compliance with
VEVRAA's reporting requirements. *See* 31 U.S.C. § 1354(a). The focus of
Kirk's claims is his allegation that Schindler knowingly filed false VETS-
100 reports in order to obtain federal money.

This case has traveled to the U.S. Supreme Court and back, and the sufficiency of the complaint remains at issue. Kirk originally claimed that Schindler's certifications of compliance with VEVRAA's VETS-100 reporting requirements were false for one of two different reasons: either (1) because Schindler had failed to file a VETS-100 report at all, or (2) because the reports it had filed were fabricated. *See Kirk I*, 606 F. Supp. 2d at 450. This Court dismissed the action. It held that it lacked subject matter jurisdiction over those of Kirk's claims that were premised on Schindler's alleged failure to file VETS-100 reports pursuant to the FCA's public disclosure bar, *see* 31 U.S.C. § 3730(e)(4)(A). *Kirk I*, 606 F. Supp. 2d at 451.[1] It also dismissed those claims premised on Schindler's filing of false VETS-100 reports on the grounds that Kirk had failed to state a valid claim. *Id.* On appeal, the U.S. Court of Appeals for the Second Circuit vacated both of those holdings, finding that the FCA's public disclosure bar did not apply and that Kirk had stated a valid FCA claim regarding the allegedly false reports. *See United States ex rel. Kirk v. Schindler Elevator Corp.* ("*Kirk II*"), 601 F.3d 94, 117 (2d Cir. 2010).

The Supreme Court reversed the Second Circuit's finding that the public disclosure bar was inapplicable. *Schindler Elevator Corp. v. United States ex rel. Kirk* ("*Kirk III*"), --- U.S. ---, 131 S. Ct. 1885, 1889 (2011). On remand, the Second Circuit subsequently affirmed this Court's dismissal of Kirk's claims premised on Schindler's failure to file VETS-100 reports, but remanded this case for further consideration of Kirk's claims premised on Schindler's filing of false reports. *See United States ex rel. Kirk v. Schindler Elevator Corp.* ("*Kirk IV*"), 437 F. App'x 13, 18 (2d Cir. 2011). Those prior opinions set forth the history of this action in considerable detail, and the Court presumes the reader's familiarity with that history.

The Circuit has remand to this Court Kirk's claim that Schindler (1) "knowingly ma[de] . . . false" VETS-100 reports, (2) which were "material to" (3) "false or fraudulent claim[s]" on its government contracts. *See* 31

---

[1]     The FCA's public disclosure bar strips federal courts of jurisdiction over qui tam actions "based upon the public disclosure of . . . transactions in a[n] . . . administrative . . . report . . . unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).

U.S.C. § 3729(a)(1)(B).[2] Because both this Court and the Second Circuit declined to address certain of Schindler's arguments for dismissal, this action remains at the motion to dismiss stage. *See Kirk* I, 606 F. Supp. 2d at 450-51 n.3; *Kirk II*, 601 F.3d at 117 n.20.

Now before the Court are two related motions: (1) Schindler's renewed motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Kirk's motion for leave to file a second amended complaint (the "SAC") pursuant to Rule 15(a)(2). The Court grants Kirk's motion for leave to amend because Schindler has not shown that any delay by him or prejudice to Schindler is undue, and because the Court finds that the SAC would withstand a motion to dismiss and therefore is not futile. Accordingly, the Court dismisses as moot Schindler's renewed motion to dismiss the First Amended Complaint.

## I.   THE PROPOSED SECOND AMENDED COMPLAINT

Save for the excision of the claims that have been previously dismissed and not reinstated, the substance of Kirk's allegations remains largely unchanged. He "alleges that Schindler, while entering into numerous contracts with the federal government that were subject to the requirements of VEVRAA," certified its compliance with VEVRAA despite having violated VEVRAA by submitting false VETS-100 reports. *See Kirk II*, 601 F.3d at 100. Schindler allegedly masked its non-compliance with VEVRAA by filing false reports in order to influence the government's consideration of Schindler's claims to payments on its government contracts. Thus, Kirk contends, each claim to payment submitted in the twelve months following a false VETS-100 report is fraudulent within the meaning of the FCA. *See id.* at 116-17. These allegations constitute the core

---

[2]   The statute—as amended by the Fraud Enforcement and Recovery Act, Pub. L. No. 111-21, § 4, 123 Stat. 1617 (2009), shortly after this Court dismissed the action—provides in relevant part that "any person who . . . knowingly makes . . . a false record or statement material to a false or fraudulent claim" is liable to the United States for a civil penalty and damages. 31 U.S.C. § 3729(a)(1)(B). The former version of this provision did not specify a materiality requirement, but imposed liability on those who made false records "to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2) (2006). *See Kirk II*, 601 F.3d at 115-16.

of the claims that the Second Circuit reinstated, and they form the core of the SAC. (*See* SAC ¶¶ 2-11, Ex. A to Decl. of Jonathan A. Willens dated Nov. 22, 2011, Dkt. No. 48.)

The substantive amendments that Kirk proposes take three forms: (1); adding specificity to overcome certain of Schindler's arguments that the First Amended Complaint does not state the alleged fraud with the particularity required by Federal Rule of Civil Procedure 9(b); (2) buttressing his allegations with two documents; and (3) restating certain claims that had been premised on a failure to file VETS-100 reports to reflect newly discovered facts that indicate that Schindler did in fact file reports for those years.

First, Kirk adds to the specificity of his fraud allegations. He describes why each VETS-100 report was false. (*See* SAC ¶¶ 59-74.) He also adds detail to his allegation that Schindler acted with the scienter needed to support his FCA claims. Schindler, he alleges, submitted its claims to the government knowing that it was ineligible for payment because it was aware that it had not gathered the information VEVRAA required; it did so to save the cost of compliance. (*See* SAC ¶ 9.)

Second, Kirk supplements his allegations with two pieces of evidence previously absent from the complaint. One, Kirk alleges that notes taken by DOL staff during their interview with Annette Selvaggio, Schindler's human resources manager for Equal Employment and Opportunity, state that Selvaggio told the DOL that there was no "process in place for employees to self-identify their veteran status." (*See* SAC ¶ 28; Ex. G to Decl. of Steven A. Reiss dated Dec. 16, 2011 ("Reiss Dec. 16, 2011 Decl."), Dkt. No. 53.) Two, Kirk alleges that although Schindler hired a consultant to prepare a draft affirmative action plan, contrary to VEVRAA regulations Schindler never implemented or distributed it. (*See* SAC ¶¶ 7, 31.) Kirk points to the plan as evidence that Schindler knew of the VEVRAA requirements that it then knowingly disregarded. (*See id.*; Ex. F to Reiss Dec. 16, 2011 Decl.)

Third, and most significantly, whereas Kirk previously alleged that Schindler had failed to file any VETS-100 reports before 2004 except for a late-filed report for the 2002 fiscal year, he now alleges that Schindler in

4

fact filed reports for 1999, 2000, and 2003, but that they were false. (*See* SAC ¶¶ 59-64.) Kirk thus seeks to recast his prior claims premised on Schindler's failure to file VETS-100 reports—which are not actionable due to the FCA's public disclosure bar, *see Kirk III*, 131 S. Ct. at 1889—as potentially viable false-report claims.[3]

## II. DISCUSSION

Leave to amend should be "freely give[n] . . . [when] justice so requires." Fed. R. Civ. P. 15(a)(2). Courts, however, may deny leave in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2007) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, Schindler contends that Kirk's amendments are offered in bad faith; that they are offered only after unreasonable delay that has resulted in undue prejudice to Schindler; and that, in any event, these amendments are futile because the proposed SAC is subject to dismissal as a matter of law pursuant to Rule 12(b)(6). The Court now addresses each contention in turn.

### A.   Schindler has Not Demonstrated Bad Faith.

Schindler asserts that the entire SAC is offered in bad faith because Kirk possesses documents that belie the factual predicate of his claims. The heart of this contention is Schindler's reading of *Kirk II* as finding the materiality element of section 3729(a)(1)(B) adequately pled only because "Schindler failed to take *any steps whatsoever* to monitor the number of covered veterans in its workforce and instead fabricated the numbers it supplied in its VETS-100 reports." 601 F.3d at 116 (emphasis added). Schindler contends that if it took "any steps whatsoever" at any time, all

---

[3]   Kirk offers these amendments based on documents that the U.S. Attorney for the Southern District of New York turned over to Kirk after the Court permitted limited discovery from third parties after remand from the Second Circuit. Those documents include the reports Schindler filed for the years at issue.

inaccuracies in the reports are immaterial as a matter of law; documents in Kirk's possession, it contends, reveal such steps, which are fatal to the SAC and which Kirk omits in bad faith. These documents all show ways in which Schindler had the ability to determine whether a given employee might have been a VEVRAA-covered veteran, and they include the following: a 1995 employment application form requesting "U.S. Military History"; an "Employee Data Add/Change" form with a "Vet. Code" field, apparently revised in 1995 and 2005; a "Voluntary Self-Identification" form that includes "Veteran Status," which is part of a 2006 employment application; and an "Affirmative Action Program" dated 2004 pertaining specifically to "Vietnam era veterans and special disabled veterans." (Exs. C, D, E, F to Reiss Dec. 16, 2011 Decl.)

Schindler's position has two fundamental flaws: an overly narrow reading of *Kirk II*, and reliance on inferences in *its* favor made from the documents at a stage where the Court must make all reasonable inferences in *Kirk*'s favor. First, Schindler argues that Kirk has ignored these documents because the Second Circuit found that Schindler's allegedly false VETS-100 reports were "material to" its false claims only because Kirk alleged Schindler's complete indifference to VEVRAA's requirements. *See Kirk II*, 601 F.3d at 116. But the Second Circuit specifically determined that it "need not now define the precise contours of the materiality requirement" in order to find the reports material on the facts alleged in the First Amended Complaint. *Id.* at 116-17. In other words, Schindler's alleged complete indifference to the truth of the VETS-100 reports was *sufficient* to find those reports material to its claims for payment. *See id.* at 117. But *Kirk II* does not state or imply that complete indifference is *necessary* in order for a court to find the reports were material to its claims for payments.

Second, and more importantly, Schindler improperly offers these documents as proof that each was in fact utilized to generate the specific VETS-100 reports at issue without any evidence of that fact, and before discovery. Schindler asks the Court to find that, as in *Ruffolo v. Oppenheimer & Co.*, the complaint has "no basis in fact" on the grounds that Kirk has adduced no evidence that the reports were *not* used. *See* 987 F.2d 129, 131 (2d Cir. 1993). But that finding in *Ruffolo* followed two years

of discovery proceedings. *Id.* Schindler's argument might prevail on a motion for summary judgment, but it is inapposite now. Kirk accepts that these documents exist but alleges, based on his experience as an employee and manager there, that they were not used to gather the information required for the VETS-100 reports.

Nor can Schindler show that any conflict between Kirk's earlier and proposed pleadings reveals bad faith, as was the case in *Kant v. Columbia University,* No. 08 Civ. 7476 (PGG), 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010). There, the court found bad faith because, "in a clumsy attempt to avoid the statute of frauds," the plaintiff had removed specific allegations of an oral agreement for a two-year term and substituted a "conclusory" allegation that the very same term "would 'be all completed within one year.'" *Id.* at *7. The plaintiff's shifting allegations, furthermore, "concern[ed] facts clearly within the plaintiff's knowledge when previous complaints were filed." *Id.* Here, by contrast, the conflict on which Schindler relies is between the SAC's allegations and Schindler's own interpretation of its proffered documents.

## B.  Neither the Delay Nor Any Resulting Prejudice is Undue.

Notwithstanding the four-and-one-half years between Kirk's First Amended Complaint (Dkt. No. 17) and this motion to amend, the delay here is not unreasonable. Kirk was under no obligation to move to amend while this action was wending its way first to the Second Circuit and then to the Supreme Court and back. Throughout that time, discovery was stayed upon Schindler's application, and that stay resulted in Kirk not receiving the documents on which his new false-report claims are based. The other amendments only add detail to the allegations—detail Kirk suggested in 2007 he would add if any claim were subject to dismissal on Rule 9(b) particularity grounds.

Furthermore, delay is not grounds for denying leave to amend "absent a showing of bad faith or undue prejudice." *Ruotolo,* 514 F.3d at 191. The Court has already ruled out bad faith, and any prejudice to Schindler is not undue. Schindler has thus far avoided providing Kirk any discovery, and so cannot claim that amendments would subject it to new and costly discovery demands or punish it for failing to anticipate shifting positions.

*Cf. McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of leave to amend where "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"). Schindler chose to withhold from Kirk the documents that give rise to the motion to amend. It cannot be heard to complain about prejudice when facts that it withheld come to light and Kirk seeks to conform the complaint to those facts.

### C. The Proposed Amendments are Not Futile.

"[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). Thus, Kirk's amendments will be disallowed as futile to the extent the claims are, as Schindler contends, subject to dismissal on one of the following four grounds: (1) if the new false-report claims are untimely because they fail to relate back to the earlier pleadings; (2) if the DOL's investigation requires the application of the doctrine of primary jurisdiction or its results collaterally estop Kirk from alleging Schindler's non-compliance with VEVRAA; (3) if the claims are implausible on their face pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); or (4) if Kirk fails to state his claims with the particularity Rule 9(b) requires.

### 1. Timeliness: Relation Back to the Original Complaint Pursuant to Federal Rule of Civil Procedure 15(c)(1)(b)

The parties agree that the new claims premised upon VETS-100 reports from 1999, 2000, and 2003 are untimely, and thus futile, unless they relate back to Kirk's original complaint (Dkt. No. 15). An amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. Am.*

*Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006) (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 159 n.3 (1984)). Thus, a new legal theory applied to the same facts set out in the earlier pleading will relate back. *See Mayle v. Felix*, 545 U.S. 644, 664 n.7 (2005). "In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back." *Slayton*, 460 F.3d at 228 (citation omitted).

Relying on *Nettis v. Levitt*, 241 F.3d 186 (2d Cir. 2001), Schindler contends that the allegations of false VETS-100 reports from 1999, 2000, and 2003 constitute an "entirely distinct" set of facts from Kirk's prior allegations that Schindler failed to file reports for those years. The new claims therefore cannot relate back, it asserts, even though the alleged fraud culminates in the same false claims. The plaintiff in *Nettis* had alleged that he had been wrongfully terminated in retaliation for his warnings to superiors about internal financial irregularities, including pervasive fraud and theft in certain divisions. 241 F.3d at 189. After those claims were dismissed, the plaintiff sought to amend by claiming retaliation not for his reports of fraud and theft, but for his alleged refusal to accede to the owner's instructions that he "implement a policy of not collecting sales tax from customers." *Id.* at 190. Thus, "the proposed amendment alleged retaliation based on an entirely distinct set of protected employee activity." *Id.* at 193. The Second Circuit in *Nettis* affirmed the district court's finding that the original complaint "did not provide 'fair notice' of the subsequent sales tax collection claims." *Id.*

The reasoning of *Nettis*, however, does not control here. The amended claims there alleged retaliation for protected conduct completely unrelated to the predicate of the earlier claims: retaliation for refusing to implement an unlawful tax policy instead of retaliation for internal whistle-blowing on employees who were plundering the company. Here, by contrast, the predicate for the false claims alleged in the proposed complaint is not "entirely distinct" from the predicate of the claims Kirk attempted to set

out in the original pleading. Both stem from an alleged course of conduct in which Schindler recklessly or intentionally disregarded VEVRAA's requirements while submitting claims that falsely certified compliance with VEVRAA.

Kirk was wrong about which violation of the FCA stemmed from Schindler's failure to file a report, and which violations of the FCA stemmed from Schindler's filing of false reports. But "the general fact situation alleged in the original pleading" certainly provided Schindler with "adequate notice of the matters raised in the" SAC. *See Slayton*, 460 F.3d at 228. Schindler knew all along that it had filed reports in those years, and Kirk alleged in his original complaint that any report filed was false. (*See, e.g.*, Compl. ¶ 25, Dkt. No. 15.) Schindler cannot feign surprise that Kirk, upon learning that these reports actually exist, claims they are false.

### 2. *Effect of Related Administrative Proceedings: Primary Jurisdiction and Collateral Estoppel*

Schindler also asserts that Kirk's filing of an administrative complaint against Schindler and the DOL's dismissal of that complaint bar this action. Prior to filing this action, Kirk had filed a complaint with the DOL's Office of Federal Contract Compliance Programs ("OFCCP") alleging that Schindler demoted and terminated him because he was a veteran and that Schindler lacked an affirmative action program for veterans, both in violation of VEVRAA. (*See* Ex. A to Decl. of Steven A. Reiss dated Nov. 1, 2011 ("Reiss Nov. 1, 2011 Decl."), Dkt. No. 45.) An OFCCP district office undertook an investigation of Kirk's charges and found insufficient evidence to support Kirk's claims. (*Id.*) Kirk sought reconsideration, and the OFCCP national office affirmed. (*See* Ex. B to Reiss Nov. 1, 2011 Decl.) The OFCCP also rejected Kirk's supporting contention that Schindler had submitted false VETS-100 reports. (*Id.* at 5-6.) Schindler contends that those administrative proceedings require dismissal here for two reasons: first, that the issues here are committed to the DOL's review pursuant to the doctrine of primary jurisdiction; and second, that the DOL's finding that Kirk's complaint lacked merit collaterally estops him from contending that Schindler did not comply with VEVRAA—and thus from contending

that its certifications of compliance were false. Neither contention withstands scrutiny.

### a.  *Primary Jurisdiction is Inapplicable.*

Primary jurisdiction is inapplicable here. It applies only when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Mathirampuzha v. Potter*, 548 F.3d 70, 83 (2d Cir. 2008) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956)).

Schindler contends that determining what counts as a false VETS-100 report requires interpretation of DOL regulations—an interpretive task "within the special competence" of DOL. *See Mathirampuzha*, 548 F.3d at 83. But Schindler agrees that Kirk cannot show falsity and materiality purely on the basis of its imperfect compliance with VEVRAA. The true question presented here is whether Schindler was knowingly or recklessly so far out of compliance as to render its claims to payment from the government fraudulent. Such questions are among the issues that courts regularly adjudicate. Thus, this case does not "rais[e] issues of fact not within the conventional experience of judges or [] requir[e] the exercise of administrative discretion." *Far E. Conference v. United States*, 342 U.S. 570, 574 (1952); *accord Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006). Indeed, in FCA cases, "courts generally decline to invoke this doctrine to defer to a federal agency, even where the FCA claims require interpretation of a regulatory scheme governed by an administrative agency." *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 340, 353 (S.D.N.Y. 2004). Simply put, the concept of primary jurisdiction is inapplicable here.

### b.  *Collateral Estoppel is Inapplicable.*

Equally meritless is Schindler's contention that the DOL's resolution of Kirk's administrative complaint collaterally estops him from claiming that Schindler lacked an affirmative action plan or that the VETS-100 reports were false. As Schindler recognizes (*see* Def.'s Renewed Mem. in Supp. of Mot. to Dismiss at 13, Dkt. No. 44), "if the administrative

proceeding has not been of an adjudicative nature, a decision arrived at by the administrative agency cannot have res judicata effect." *Delamater v. Schweiker*, 721 F.2d 50, 53 (2d Cir. 1983). And the proceeding is not "adjudicative" in nature "unless the agency has made its decision using procedures substantially similar to those employed by the courts." *Id.* (citing Restatement (Second) of Judgments § 83 cmt. b).

Schindler cannot prevail on its contention that the OFCCP's investigation of Kirk's complaint employed such quasi-judicial procedures since here (*see, e.g.*, Aff. of Daniel Kirk dated Sept. 27, 2007 ¶¶ 16-24, Dkt. No. 25; Exs. D & E to Kirk Aff.), just as in *Delamater*, "[t]here was no hearing, no testimony, no subpoenaed evidence, no argument, no opportunity to test any contention by confrontation." *See* 721 F.2d at 54. Accordingly, just as the Second Circuit concluded in *Delamater*, "[t]he doctrine of administrative res judicata thus ha[s] no application" here. *Id.*

### 3.   *Plausibility*

Schindler contends that the Court should find the SAC's claims implausible and subject to dismissal as a matter of law, and therefore deny Kirk's motion to amend. *See generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Schindler relies for that proposition on two documents in Kirk's possession that are incorporated into the SAC by virtue of Kirk's having specifically relied upon them, and having quoted from them, in the SAC. *See Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *see also Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

Those documents are (1) the OFCCP staff's notes of an interview by the staff with Annette Selvaggio, the Equal Employment Opportunity Manager at Schindler, and (2) Schindler's 2004 affirmative action plan. The first at most suggests that Selvaggio told the OFCCP that Schindler may have prepared its 2004 VETS-100 report using data from certain employees' job applications. (Ex. G to Reiss Dec. 16, 2011 Decl.)  The second does not indicate on its face that an affirmative action plan was in fact implemented. The plan is marked "Confidential" (*see id.*), and Kirk offers it as evidence that Schindler was aware of its VEVRAA obligations and consciously disregarded them because of the expense of implementing

an affirmative action plan and otherwise complying with VEVRAA. These documents—as distinct from the inferences favorable to Schindler that it would have the Court draw from those documents—do not render Kirk's claims implausible.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Schindler's arguments on this point are largely premised on the Court's acceptance of the OFCCP's findings as binding—a proposition that the Court has already rejected. These documents do not otherwise render Kirk's allegations implausible, even if some of the allegations seem somewhat unlikely. Notes of Selvaggio's statements to the OFCCP, for example, are distinct from sworn testimony in affidavits, in depositions, or at trial describing how Schindler prepared VETS-100 reports. Because Kirk alleges on his own personal knowledge that the affirmative action program was never implemented, Schindler's alleged lack of a mechanism for counting veterans is plausible.

### 4.   *Federal Rule of Civil Procedure 9(b)*

Last, Schindler contends that the allegations in the SAC do not meet the requirements of Rule 9(b). It is well settled that Rule 9(b) applies to FCA claims. *See Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," except that state of mind "may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker; (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006).

These heightened pleading requirements are "intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citation and quotation marks omitted). "[T]he degree of particularity required should be

13

determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts." *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987). However, even where plaintiffs have not taken discovery, "a 'pleading technique that couples a factual statement with a conclusory allegation of fraudulent intent' is insufficient to 'support the inference that the defendants acted recklessly or with fraudulent intent.'" *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (alteration brackets omitted) (quoting *Shields*, 25 F.3d at 1129).

Schindler contends that the SAC falls short of Rule 9(b) in two ways: first, that Kirk has not alleged falsity because he has not alleged that Schindler excluded from the VETS-100 reports anyone who self-identified as a covered veteran; and second, that Kirk failed to plead scienter adequately because Kirk offers no plausible motive for *under*-reporting its veteran numbers.

### a.   Falsity Pleading

The first contention merits only brief discussion at this stage because it is an attack less on the particularity of the pleadings than on the theory of relief. Schindler argues that Kirk has failed to plead falsity because he has not identified a veteran who did self-identify and was not counted. Schindler contends that VEVRAA required only reporting those who volunteered their information, but the very next sentence of the regulation on which it relies requires a voluntary self-identification process that Kirk alleges Schindler never attempted. *See* 48 C.F.R. § 52.222-37(e) (2009). Kirk has sufficiently alleged the falsity of the reports for the same reason the Second Circuit found the reports material to the government's decision to pay Schindler: without a mechanism for counting veterans, the reports must have been contrived.

### b.   Scienter Pleading

"Scienter may be pled generally under both the FCA and Rule 9(b)." *U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 83 (D. Conn. 2006) (citing *Gold*, 68 F.3d at 1477; 31 U.S.C. § 3729(b)). Nonetheless, Rule 9(b) requires allegations of "facts giving rise to a strong inference of fraudulent intent."

14

*Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990). Generally, to establish the inference, "a plaintiff may allege a motive for committing fraud and a clear opportunity for doing so." *Powers v. British Vita P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995).

Here, the mental state required is that the false claims or reports were submitted "knowingly," which the statute makes clear "require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B); *see also U.S. ex rel. Winslow v. PepsiCo, Inc.*, No. 05 Civ. 9274 (CLB), 2007 WL 1584197, at *8 (S.D.N.Y. May 31, 2007) (discussing FCA's mental state requirement). Indeed, "[t]he [FCA]'s scienter requirement is something less than that set out in the common law for fraud-based causes of action." *United States v. Raymond & Whitcomb Co.*, 53 F. Supp. 2d 436, 446 (S.D.N.Y. 1999) (citation and quotation marks omitted). Thus, Kirk must allege facts "that would support an inference that defendant[] knew of specific facts that" contradict its allegedly false reports, *Rombach*, 355 F.3d at 176, or an inference that defendant acted in "deliberate ignorance" or "reckless disregard of the truth or falsity" of the reports, *see* 31 U.S.C. § 3729(b)(1)(A).

Courts have found a sufficient motive at the pleading stage of FCA false-certification cases simply from the fact that certifications were allegedly false and necessary to obtain payments. In *United States ex rel. Anti-Discrimination Center of Metro New York, Inc. v. Westchester County*, for example, the court found the required inference because "receipt of the [federal agency] funds was tied to [the defendant's] certifications." *See* 495 F. Supp. 2d 375, 389 (S.D.N.Y. 2007). The motive to submit a false certification there was clear: the county wanted federal grants, but its explicit policy was contrary to the certification it had to make in order to obtain federal money. *Id.*

The motive here is decidedly less obvious. Kirk does not allege that Schindler would have received fewer government contracts if it had reported the actual number of veterans it employed. Indeed, Kirk alleges that Schindler failed to include in its reports veterans it did employ. Schindler contends that there is therefore no plausible motive sufficient to raise an inference of fraudulent intent for Schindler *not* to report accurately

its veteran workforce. To under-report its veterans, Schindler claims, would be "manifestly economically irrational." *See U.S. ex rel. Feldman v. City of N.Y.*, 808 F. Supp. 2d 641, 655 (S.D.N.Y. 2011) (citation omitted).

This argument fails for two reasons. First, Kirk has alleged that Schindler sought to save the cost of devising and implementing a mechanism for counting veterans. (*See* SAC ¶ 9.) After all, "the potentially considerable administrative costs associated with conducting proper due diligence before [submitting VETS-100 reports] should be taken into account in any serious analysis." *Feldman*, 808 F. Supp. 2d at 655. Second, Schindler takes issue with its alleged motive for failing to track the number of covered veterans, not its motive for submitting false reports after—as Kirk alleges—having failed to track its veteran workers. The latter is at issue here.

Schindler also asserts that the Court must not permit Kirk to amend its pleading because the SAC lacks alleged facts "that would support an inference that [Schindler] knew of specific facts that are contrary to [its] public statements." *See Rombach*, 355 F.3d at 176. But Schindler here invokes a mental state requirement higher than that required for an FCA claim. If, as Kirk alleges, Schindler made no attempt to comply with the reporting requirements, it acted with at least the requisite "reckless disregard of the truth or falsity" of the reports, if not "deliberate ignorance." *See* 31 U.S.C. § 3729(b)(1)(A).

## III. CONCLUSION

Kirk may amend the First Amended Complaint pursuant to Rule 15. The Court concludes that the SAC is not offered in bad faith and that the proposed amendments contained in the SAC will not result in undue prejudice to Schindler. Further, the SAC is not subject to dismissal as a matter of law, and so its filing will not be futile. Accordingly, the Court grants Kirk's motion for leave to amend the complaint (Dkt No. 47); Kirk is directed to file the Second Amended Complaint within five days. The Court also dismisses as moot Schindler's motion to dismiss the First Amended Complaint (Dkt. No. 20). As a result, the stay of discovery in this action is hereby lifted; the parties are directed to confer on a discovery

schedule and submit a proposed schedule to the Court within ten days of entry of this Opinion and Order.

Dated:   New York, New York
            February 22, 2013

SO ORDERED:

Sidney H. Stein, U.S.D.J.